Darlene GULDEMAN, formerly Darlene
Heller, Plaintiff and Appellant,

v.

Arnold HELLER, Defendant and
Respondent.

Civ. No. 8409.

Supreme Court of North Dakota.

June 2, 1967.

Ella Van Berkom, Minot, for plaintiff and appellant.

Waldron & Kenner, Minot, for defendant and respondent.

PAULSON, Judge.

The plaintiff, Darlene Guldeman, formerly Darlene Heller, and the defendant, Arnold Heller, were married on June 7, 1955. One child, namely, Marty Ray Hel-

ler, was born on November 11, 1957, as the issue of this marriage. Mrs. Guldeman commenced a divorce action against the defendant during the year 1961 and secured a default judgment on December 6, 1961. The judgment included a stipulation which provided that the custody of the child was granted to the plaintiff subject to the right of reasonable visitation by the defendant. The plaintiff married one Michael Guldeman within a period of two days after the granting of the default divorce.

The defendant, through his attorney, presented a motion on March 19, 1962, to the court, requesting that the custody of the child be changed and that the custody of the child be awarded to him. The court, after a hearing on the motion, amended and modified the judgment dated December 6, 1961, by an order dated May 9, 1962, wherein the court granted joint custody to the plaintiff and the defendant, but actual custody was vested in Mr. Heller. The order further provided that the same could be modified upon the expiration of six months, together with the presentation of additional evidence justifying modification of the order. The plaintiff, on April 23, 1963, presented a motion to the court requesting that the actual custody of the child, that is, Marty Ray, be returned to her. The court in a detailed memorandum opinion indicated that there was sufficient change of circumstances and, accordingly, in an order dated July 24, 1963, the court amended and modified the judgment whereby the defendant was granted legal custody of the child but the plaintiff was awarded actual physical custody subject to reasonable rights of visitation on the part of the defendant.

The defendant, through his attorneys, moved the court for a change of custody and hearing was held before the Honorable Roy A. Ilvedson on December 1, 1966. Testimony was presented on behalf of the plaintiff and the defendant, together with the questioning of their child by the court, and subsequent thereto on December 19,

1966, the district court awarded custody of the child to the defendant, Arnold Heller.

The plaintiff has appealed from the order dated December 19, 1966, and, in addition thereto, has demanded a trial de novo. The statute authorizing trials anew in this court applies only to judgments. Sec. 28-27-32, N.D.C.C.; Dale v. Duffy, 44 N.D. 33, 176 N.W. 97. Therefore, the review of this appeal is limited to that portion of the judgment roll which relates to the order dated December 19, 1966, changing the custody of the child from the plaintiff to the defendant.

The appellant urges that there has been no change in circumstances sufficient to warrant a change in custody and further contends that it is for the best interests of the child that he remain with his natural mother.

Marty Ray Heller now is more than nine years of age. His natural father, Arnold Heller, is thirty-four years of age. Arnold Heller married his present wife, Gail F. Heller, in April of 1965 and she is twenty-four years of age. Mr. Heller has been continuously employed at the Minot Air Force Base since the month of March 1959. He owns the house in which he and his wife and an infant daughter, the issue of his second marriage, all reside. This home is located in a neighborhood in which there are several boys of Marty's age. Mr. Heller exhibits and shows a great deal of interest in his son, as does the stepmother. Mr. and Mrs. Arnold Heller have indicated in their testimony that their marriage is a successful and happy one.

Michael Guldeman, the present husband of the plaintiff, is forty-eight years of age, approximately eighteen years older than his wife. This is Guldeman's third marriage. During the time that Mrs. Guldeman has had the custody of Marty, she and her husband have moved at least three times. They left Marty for a period of five months with his maternal grandmother while they were residing in Arizona. Since Marty commenced his formal schooling, the family has resided in Bismarck for one year and has resided at several different locations in Minot, North Dakota. During such custody period, Marty Heller has been enrolled in four different schools. The Guldemans presently rent a home located approximately a quarter of a mile outside the city limits of Minot. They have one child, a daughter four years old, who is the issue of their marriage. Mr. Guldeman, the stepfather, has followed the occupation of salesman during all of his married life and has represented various companies, including the Shoppers Charge Plan of Minot, North Dakota. In addition, he raises horses and was also interested in promoting the circulation of petitions to legalize parimutuel betting in this State. During the month of December 1966 he was in the process of organizing a corporation to distribute a new bathroom appliance.

The Guldemans, during their married life, have had some serious marital problems. They separated for a period of five months, that is, from March to July 1965, and Mrs. Guldeman was also separated from her husband for a period of three weeks in the spring of 1966. There is also a difference in religious background in the Guldeman family. The Guldemans testified that they have now resolved their marital differences.

As previously stated, Marty Heller was questioned in the court chambers by the trial judge. Such questioning was consented to and agreed upon by respective counsel. The child expressed to the trial judge a preference to live with his father. When asked why he preferred to live with his father, the child replied:

" * * * we are always moving around and they—I got more friends out at my dad's."

The child further stated that he got along "pretty well" with his stepfather but that he would "get hollered at a lot."

In awarding the custody of a minor to one of the parties, a child's preference is one of the factors to be considered by the court. The North Dakota statute provides that the court is to be guided by certain considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if the child is of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question; * * *" [Sec. 30–10–06, N.D.C.C.]

McKay v. Mitzel, 137 N.W.2d 792 (N.D.). There is no exact age which gives a child capacity to make a choice. It depends on the extent of mental development. 67 C.J.S. Parent and Child Sec. 12(c), at page 657. The Nebraska Supreme Court held that a ten-year-old boy had shown a high degree of intelligence and manifested his desires in such a manner as to warrant being placed in the custody of the parent of his choice. Waldbaum v. Waldbaum, 171 Neb. 625, 107 N.W.2d 407. In the case at bar the trial judge stated in his *memorandum opinion that Marty's* expressed desire was entitled to some consideration, together with the other facts adduced at the hearing.

All of the parties involved in this proceeding have indicated a deep interest in Marty. Both of his natural parents, as well as both of his stepparents, have indicated that they have the time to devote to Marty should *custody be granted to either of them.*

Marty is currently taking piano lessons and is progressing well in his studies. He is in good health and it appears that he is a reasonably happy child.

The question of determining in whom to place the custody of a child is one of the most difficult problems that is presented to the courts. The child is the innocent victim of the marital difficulties which arise between parents. Because of the myriad problems involved, trial courts are vested with a great deal of discretion and their decisions will ordinarily be changed only where there is an abuse of that discretion. Gress v. Gress, 148 N.W. 2d 166 (N.D.); Azar v. Azar, 146 N.W.2d 148 (N.D.); Sjol v. Sjol, 76 N.D. 336, 35 N.W.2d 797. The trial court should always award the custody of the child in accordance with the best interests of the child and such an award is always subject to modification as the best interests of the child may require. In other words, the rights and welfare of the child are of first consideration. Those rights are paramount to the rights of the parents to custody, the concern of the parents being important only to the extent that their interest bears upon the question of what is best for the child. Nicholson v. Nicholson, 126 N.W.2d 904 (N.D.). When, after a divorce and determination of custody has been made, a change of custody is sought by the party to whom custody has been denied, a decision again must be governed by what is best for the child. The fundamental factors for consideration in determining that question are the attitude of the parents to the child since the divorce, the age of the child, any change of circumstances, conduct of the custodial party, the morals of the parents, their financial condition, and any other matters that bear upon the welfare of the child. Hedman v. Hedman, 62 N.W.2d 223 (N.D.), Syllabus 2. This State has a statutory provision setting forth the guidelines to be considered in custody cases. We quote the relevant portion of said statute, Section 30–10–06(2) of the North Dakota Century Code:

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years, it should be given to the mother, and if it is of an age to require education and preparation for labor or business, then to the father."

The phrase "other things being equal" gives the court a large measure of discretion to determine how the best interests of the child will be served. 24 Am.Jur.2d, Divorce and Separation, Sec. 785, p. 893. In Gress v. Gress, 148 N.W.2d 166, 179, this court, in quoting from 27B C.J.S. Divorce Section 309(4), at pages 461–462, stated:

"The general rule as to preference to be given to the mother in the award of custody of young children, or so-called 'tender years doctrine,' is not, however, inflexible and applicable in every case merely because the mother has not been shown clearly unfit; and it has been said to be merely an aid to the court or one facet of the basic principle that the best interests and welfare of the child are the controlling considerations. The general rule is qualified by the requirement that other things be equal, and, whether or not such rule has been recognized or affirmed by statute, the mother of a child of tender years is not entitled to its custody as a matter of law. Accordingly, such a child may be awarded to the father, in the discretion of the court, where the circumstances of the case require it for the child's best interests, * * *."

■ The district court granted the custody of the child to the father, Arnold Heller. Such decision was based upon the instability exhibited by the plaintiff and her husband as evidenced by their marital difficulties, their moving from one city to another, and their temporary locations within the city of Minot, together with the fact that Mr. Guldeman has engaged in a wide variety of occupations, is considerably older than the boy's natural father, and is of a different religious background. These factors indicate sufficient basis to show that the trial court's discretion was carefully and reasonably exercised. We therefore conclude that it is for the best interests of the child that he remain in the custody of the natural father at this time. The trial court has continuing jurisdiction in custody matters and thus, if conditions should change, the trial court may, if necessary, again consider appropriate proceedings for the custody of this child.

The respondent has presented a motion to this court relative to the custody of the child pending this appeal. The district court granted a stay of the order dated December 19, 1966, after the appeal to the Supreme Court had been perfected. The respondent contends that the lower court had no jurisdiction over this matter as jurisdiction had passed to the Supreme Court. Section 14–05–22 of the North Dakota Century Code is applicable to this matter and reads as follows:

"In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time."

■ Furthermore, pursuant to Rule 62(k) of the North Dakota Rules of Civil Procedure, the trial court has discretion to stay the execution or performance of an order. The relevant portion of subsection (k) of such Rule reads as follows:

"When the appeal is from an order, the execution or performance thereof shall not be delayed, except upon compliance with such conditions as the court shall direct, * * *."

Thus, we find no error in the order in which the trial court granted a stay pending this appeal. The respondent also presents the issue of the appellant's failure to post a supersedeas bond. We again refer to Rule 62(k), supra, which states in part:

" * * * when so required, an undertaking shall be executed on the part of the appellant by at least two sureties in such sums and to such effect as the court shall direct. * * *"

This provision of subsection (k) of Rule 62, supra, provides the district court with the discretionary power of determining whether such bond is necessary. We hold for the reasons heretofore stated that the district court did not commit error by not requiring a bond, and, in addition, such bond would not be necessary in this case where the appeal is not one from a money judgment.

The order of the district court accordingly is affirmed.

TEIGEN, C. J., and KNUDSON, ERICKSTAD and STRUTZ, JJ., concur.